TOMPKINS, MCGUIRE, WACHENFELD & BARRY
William H. Trousdale
wtrousdale@tompkinsmcguire.com
Brian M. English
benglish@tompkinsmcguire.com
3 Becker Farm Road
Suite 402
Roseland, New Jersey 07068-1726
Telephone: (973) 623-7893
Facsimile: (973) 623-7780

COVINGTON & BURLING LLP
Clara J. Shin (*pro hac vice* admission to be filed)
cshin@cov.com
Jeffrey M. Davidson (*pro hac vice* admission to be filed)
jdavidson@cov.com
Wallace J. Lee (*pro hac vice* admission to be filed)
wlee@cov.com
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 561-6000
Facsimile: (415) 591-6091

*Attorneys for Plaintiff*
*MICROSOFT CORPORATION*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICROSOFT CORPORATION,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**BIO-REFERENCE LABORATORIES, INC.,**<br><br>    **Defendant.** | Docket No.:<br><br>CIVIL ACTION<br><br>**COMPLAINT** |

Plaintiff Microsoft Corporation  ("Plaintiff"), for its complaint against Bio-Reference Laboratories, Inc. ("Bio-Reference" or "Defendant"), alleges on personal knowledge as to its own activities and on information and belief as to the activities of others, as follows:

## NATURE OF THE ACTION

1.      Bio-Reference has been using Microsoft's software to conduct Bio-Reference's business, while willfully refusing to pay for it, a form of piracy.  Accordingly, this action arises from Bio-Reference's breach of its contractual obligations and implied covenant of good faith and fair dealing, and willful copyright infringement.

2.      Microsoft[1] develops, manufactures, and supports a wide range of computer and internet-related software products and services.  Since its founding in 1975, Microsoft has invested untold amounts of labor and money in its software development and licensing efforts.

3.      On information and belief, Bio-Reference offers laboratory testing and related services to physician offices, clinics, hospitals, long-term care facilities, employers, governmental units, and correctional institutions.  On information and belief, Bio-Reference employs some 5,000 individuals and operates out of nine locations, including in New Jersey, New York, Maryland, Massachusetts, Rhode Island, Ohio, Florida, Texas, and California.

4.      Microsoft makes its products accessible to customers through a variety of volume licensing programs, including the Enterprise program.  The Enterprise license agreement permits customers to make and deploy copies of Microsoft products on the condition that they order and pay for those copies on an annual basis, at agreement anniversaries.  When an Enterprise license

---

[1] "Microsoft" refers collectively to Plaintiff Microsoft Corporation, its affiliates and subsidiaries, including Microsoft Licensing, GP.

agreement expires, Enterprise customers must order licenses for all copies of products for which they have not yet submitted an order and must cease making further copies. Microsoft's Enterprise program requires customers to submit to verification procedures to ensure that they have paid for the software they have deployed. This independent verification process is critical to protecting Microsoft's intellectual property and ensuring the integrity of the Enterprise program.

5.      Microsoft and Bio-Reference entered into an Enterprise licensing agreement on January 10, 2013. Among other obligations, Bio-Reference agreed that Microsoft and its affiliates may verify Bio-Reference and its affiliates' Microsoft software licensing and deployment through an independent public accounting firm.

6.      On December 15, 2014, Microsoft notified Bio-Reference that it was exercising its contractual verification rights and that a big-four accounting firm, KPMG, would be responsible for verifying Bio-Reference's compliance with the terms of the licensing program. Before Bio-Reference halted KPMG's independent verification, KMPG discovered significant and wide-spread unlicensed use of Microsoft products. Despite Microsoft's efforts to resolve this matter without judicial intervention, Bio-Reference has to date refused to perform its obligations.

**THE PARTIES**

7.      Microsoft Corporation is a corporation organized and existing under the laws of the state of Washington, with its principal place of business in Redmond, Washington.

8.      On information and belief, Bio-Reference Laboratories, Inc. is a corporation organized and existing under the laws of the state of New Jersey, with its principal place of business in New Jersey.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action involves claims brought under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*.

10. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as well as under general principles of supplemental and pendent jurisdiction. This Court also has subject-matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332, because there exists complete diversity of citizenship between the parties, and the amount in controversy is multiple millions of dollars, satisfying the jurisdictional minimum of this Court.

11. This Court has personal jurisdiction over Bio-Reference because, on information and belief, Bio-Reference's principal place of business is in Elmwood Park, New Jersey.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), and by contractual agreement between the parties.

## FACTS ENTITLING MICROSOFT CORPORATION TO RELIEF

### A. The License Agreements

13. Effective January 2013, Bio-Reference and Microsoft Licensing, GP entered into an Enterprise volume licensing arrangement. This arrangement is governed by the terms of the following agreements entered into between Bio-Reference and Microsoft Licensing, GP in January 2013: (a) Microsoft Business and Services Agreement; (b) Enterprise Agreement; (c) Enterprise Enrollment (Direct) (as amended); (d) Enrollment for Application Platform (Direct) (as amended); (e) Enrollment for Core Infrastructure (Direct EA) (as amended); and (f) Customer Price Sheets, Product Selection Forms and Program Signature Forms associated with the Enrollments described above (collectively, the "License Agreements"). The License

Agreements remained in force through January 31, 2016.  The Microsoft Business and Services Agreement associated with the License Agreements remains in force until terminated.  The License Agreements are "governed by and construed in accordance with the laws of the State of Washington and federal laws of the United States."

14.     On August 17, 2014, Microsoft Licensing, GP assigned the License Agreements to Microsoft Corporation.  On August 1, 2014, Microsoft Licensing, GP duly notified Bio-Reference of the assignments in writing.  Microsoft Licensing, GP was, and continues to be, a wholly-owned subsidiary of Microsoft Corporation.

15.     The License Agreements bind the "Customer"—*i.e.*, Bio-Reference—"and its Affiliates."  "Microsoft" is defined as "the Microsoft Affiliate that has entered into this agreement and its Affiliates, as appropriate."  The term "Affiliate" is defined, in relevant part, as "any legal entity that a party owns, that owns a party, or that is under its common ownership."

16.     The License Agreements expressly condition Bio-Reference's right to "use" Microsoft products on Bio-Reference ordering the quantity of products used.  The License Agreements define the term "use" broadly to mean  "copy, install, use, access, display, run or otherwise interact."

17.     Bio-Reference granted Microsoft and its affiliates "the right to verify compliance with the license terms" through an "independent auditor."  Bio-Reference agreed to "promptly provide the independent auditor with any information it reasonably requests in furtherance of the verification."

18.     Bio-Reference further agreed that it would promptly remedy any unlicensed use discovered through this verification: "If verification or self-audit reveals any unlicensed use, Customer must within 30 days order sufficient licenses to cover its use.  If unlicensed use is 5%

or more, Customer must reimburse Microsoft for the costs Microsoft has incurred in verification and acquire the necessary additional licenses at 125% of the then current price list and Customer price level within 30 days."

### B. Bio-Reference's Refusal to Comply with Its Verification Obligations

19.     On December 15, 2014, Microsoft Corporation notified Bio-Reference that it intended to verify Bio-Reference's compliance with the License Agreements ("Verification Notice"). The Verification Notice explained that the verification would take place during regular business hours and in a manner that would not unreasonably interfere with Bio-Reference's operations. It also informed Bio-Reference that the verification included all Microsoft products that Bio-Reference or its affiliates use or distribute. Microsoft retained KPMG to conduct the verification.

20.     When KPMG's initial verification findings identified widespread unlicensed use of Microsoft products, Bio-Reference began to obstruct the verification. For example, after providing preliminary data to KPMG in February 2015, Bio-Reference thereafter barred KPMG from Bio-Reference's premises. As another example, Bio-Reference began attacking KPMG's methodology but did not respond when Microsoft asked Bio-Reference to send a detailed list of its concerns by April 27, 2015.

21.     On May 14, 2015, based on information Bio-Reference had provided, KPMG issued a preliminary report detailing Bio-Reference's actual license use, known as the "Effective License Position" or "ELP." Following receipt of the ELP, Bio-Reference claimed that the ELP was "riddled with errors," but refused to provide any evidence or specific details of those errors. Bio-Reference, however, acknowledged that it was copying and using Microsoft products

without licenses and offered to pay Microsoft $1 million. Bio-Reference did not explain the basis for this $1 million payment offer.

22. In order to issue a final ELP, KPMG requested additional data from Bio-Reference in July 2015. Bio-Reference provided some, but not all, of the requested data.

23. After additional follow-up data requests went unanswered, Microsoft sent Bio-Reference an updated ELP on September 14, 2015 with the information Bio-Reference had provided up to that date. Based on this information, the scope of Bio-Reference's unlicensed use of Microsoft products was some $3.5 million.

24. Microsoft requested a three-way call with Microsoft, KPMG, and Bio-Reference, the purpose of which was to finalize the ELP. On September 16, 2015, Bio-Reference stated that it would neither participate in the call nor provide any additional information.

25. By letter dated October 14, 2015, Microsoft requested that Bio-Reference fulfill its obligations under the License Agreements. The next day, Bio-Reference sent a payment of $1,443,006 and then informed Microsoft that it "consider[ed] the matter closed." Bio-Reference's payment is less than half the value of its unlicensed usage as reported in the September 14, 2015 ELP, and Microsoft promptly informed Bio-Reference that its partial payment did not satisfy its obligations to pay for its usage of Microsoft software.

26. On December 10 and 14, 2015, KPMG and Microsoft met with Bio-Reference by telephone. Microsoft asked Bio-Reference to provide any substantiation for its claim that the ELP is incorrect. In lieu of any such substantiation, Bio-Reference offered an analysis of its license use for a time period different from the verification period and conducted by non-accountant consultants it had retained.

27.     After additional discussions by telephone, Microsoft requested that Bio-Reference provide any additional information Bio-Reference considered to be relevant to the ELP by January 14, 2016.  On January 13, 2016, Bio-Reference provided a list of users that it contended should not have been counted by KPMG (*e.g.*, duplicate users).  On January 21, 2016, KPMG provided its final ELP, accounting for the additional information Bio-Reference had provided.  Based on the final ELP, Bio-Reference's unlicensed use and deployment of Microsoft products was still valued at millions of dollars.

28.     Bio-Reference never responded to the final ELP.

29.     Instead, Bio-Reference submitted orders to Microsoft's reseller on January 22, 2016 totaling $686,515.44.  Bio-Reference informed Microsoft's reseller that its orders did not "need to align with Microsoft's draft ELP" but acknowledged that there were still outstanding issues that had not been resolved.

30.     Microsoft informed Bio-Reference that its partial payment did not resolve its material under-licensing.

31.     On March 4, 2016, Microsoft's Vice President of Sales for Health and Life Sciences accounts reached out to Dr. Marc Grodman, the CEO of Bio-Reference, offering to discuss Bio-Reference's underlicensing.  Bio-Reference ignored the outreach.

32.     Bio-Reference remains substantially under-licensed and is making extensive use of Microsoft's software without permission.

33.     Bio-Reference's conduct to date makes clear that it has been infringing Microsoft's copyrights, acting in bad faith, and has no intention of complying with its contractual obligations.  Microsoft therefore seeks relief from this Court.

## COUNT I
### (Copyright Infringement)

34.     Microsoft Corporation re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1-33, inclusive.

35.     Microsoft Corporation holds valid and exclusive copyrights for each of the Microsoft products identified herein, for which Bio-Reference is underlicensed as determined by KPMG:

| Title | Copyright Registration No. | Copyright Registration Date |
|---|---|---|
| Microsoft Office Professional Plus 2010 | TX 7-151-840 | May 28, 2010 |
| Office 365 ProPlus 2016 | TX 8-097-602 | Oct. 7, 2015 |
| SQL Server 2014 Enterprise registered | TX 7-976-865 | Oct. 21, 2014 |
| Windows Server 2012 registered | TX 7-622-123 | Oct. 2, 2012 |
| Exchange Server 2013 registered | TX 7-757-947 | Jun. 7, 2013 |
| Exchange Server Enterprise (2010) | TX 7-134-724 | Feb. 9, 2010 |
| Microsoft Office Live Communications Server 2005 Enterprise edition registered | TX 6-108-286 | Jan. 27, 2005 |
| Microsoft Project Server 2010 | TX 7-377-340 | July 27, 2010 |
| Microsoft MapPoint 2004 | TX 5-945-155 | Oct. 14, 2003 |
| Microsoft Project Professional (2013) | TX 7-751-912 | Mar. 25, 2013 |
| Microsoft Project Professional (2010) | TX 7-348-992 | Jun. 28, 2010 |
| Microsoft Project Professional (2007) | TX 6-524-397 | Mar. 30, 2007 |
| Microsoft Project Professional (2002) | TX 5-578-198 | Jul. 28, 2002 |
| Microsoft Visio Professional (2013) | TX 7-751-909 | Mar. 25, 2013 |
| Microsoft Visio Premium 2010 registered | TX 7-349-654 | Jun. 21, 2010 |
| Microsoft Visio Professional (2007) | TX 6-524-400 | Mar. 30, 2007 |

| Microsoft Visio Professional (2003) | TX 5-837-614 | Dec. 1, 2003 |
| Microsoft Visual Studio Ultimate w/MSDN (2013) | TX 7-824-126 | Jan. 21, 2014 |

36.  Between 2013 and continuing to the present, Bio-Reference has infringed the copyrights in Microsoft's software by reproducing Microsoft software products covered by Microsoft Corporation's registered copyrights in the United States of America without approval or authorization from Microsoft.

37.  Between 2013 and continuing to the present, Bio-Reference has also infringed the copyrights in Microsoft's software by reproducing Microsoft software products covered by Microsoft Corporation's registered copyrights in the United States of America without due compensation to Microsoft.

38.  As a result of the foregoing activities, Bio-Reference is liable to Microsoft Corporation for copyright infringement under 17 U.S.C. § 501.  Microsoft Corporation has suffered, and will continue to suffer, losses that will be ascertained according to proof.  Pursuant to 17 U.S.C. § 504(b), Microsoft Corporation is entitled to recover its actual damages.  In the alternative, Microsoft Corporation is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).

39.  Microsoft Corporation is also entitled to injunctive relief prohibiting Bio-Reference's continued infringement pursuant to 17 U.S.C. § 502.  Microsoft Corporation has no adequate remedy at law for Bio-Reference's wrongful conduct because (a) Microsoft Corporation's copyrights are unique and valuable property, (b) Bio-Reference's wrongful conduct, and the resulting damage to Microsoft Corporation, is continuing, and (c) Bio-

Reference has hidden the full scope of its copyright infringement by refusing to cooperate with a contractually required verification of its licensing compliance.

40.     On information and belief, Bio-Reference's conduct has been willful within the meaning of the Copyright Act.  At a minimum, on information and belief, Bio-Reference has acted with willful blindness to and in reckless disregard of Microsoft Corporation's registered copyrights.

41.     Microsoft Corporation is also entitled to recover its attorney's fees and costs of suit pursuant to 17 U.S.C. § 505.

## COUNT II
### (Breach of Contract)

42.     Microsoft Corporation re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1-41, inclusive.

43.     Effective January 10, 2013, Bio-Reference and Microsoft Licensing, GP entered into the License Agreements.  The License Agreements are a valid and binding contract supported by consideration.

44.     On August 17, 2014, Microsoft Licensing, GP assigned the License Agreements to Microsoft Corporation.  Microsoft Corporation and Microsoft Licensing, GP have performed all of their duties and obligations under the License Agreements.

45.     Bio-Reference has breached the License Agreements in at least three ways:

(a)  Bio-Reference refused to complete an independent verification;

(b)  Bio-Reference failed to timely provide information reasonably requested by KPMG; and

(c)  Bio-Reference failed to order licenses for all copies of Microsoft software products it has run and deployed during the term of the License Agreements.

46.     Microsoft Corporation has been injured by Bio-Reference's breaches and is entitled to damages in an amount to be proven at trial.

47.     Microsoft Corporation has no adequate remedy at law because Bio-Reference has prevented an investigation into the full scope of Bio-Reference's license non-compliance. Microsoft Corporation requires specific performance of Bio-Reference's verification duties to determine the full extent of Bio-Reference's license non-compliance and copyright infringement.

## COUNT III
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

48.     Microsoft Corporation re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1-47, inclusive.

49.     The License Agreements contain implied covenants of good faith and fair dealing, providing that neither party would act to deprive the other of the benefits of the agreements between them.

50.     Bio-Reference's conduct represents a breach of the implied covenants of good faith and fair dealing between Bio-Reference and Microsoft, including, without limitation, by:

> (a) unreasonably delaying the contractually required independent verification;

> (b) advancing pretextual reasons for not completing the contractually-required independent verification; and

> (c) failing to cooperate with Microsoft's attempts to obtain the full benefits of the contractually-required independent verification.

51.     As a direct and proximate result of such breach and Bio-Reference's wrongful conduct, Microsoft Corporation has been damaged in an amount to be determined according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Microsoft Corporation prays for judgment against Bio-Reference as follows:

A.      For an order requiring specific performance of Bio-Reference's verification obligations under the License Agreements, in particular, ordering Bio-Reference to promptly provide an independent auditor with the data necessary to measure Bio-Reference's software usage and licensing of Microsoft products and to allow an independent auditor to conduct an on-site inspection to test and verify this data as necessary to complete the verification;

B.      For an order requiring Bio-Reference to purchase the necessary Microsoft product licenses pursuant to the terms of the License Agreements, after an independent auditor completes the software verification;

C.      For an order enjoining Bio-Reference, its officers, agents, servants, employees, attorneys, and those persons who are in active concert or participation with them from infringing Microsoft Corporation's copyrighted products pursuant to 17 U.S.C. § 502;

D.      For an award of damages sustained by reason of Bio-Reference's copyright infringement pursuant to 17 U.S.C. § 504(b), the exact amount to be proven at trial; or if elected prior to final judgment, statutory damages pursuant to 17 U.S.C. § 504(c);

E.      For a finding that Bio-Reference has willfully infringed Microsoft Corporation's federally registered copyrights, entitling Microsoft Corporation to enhanced statutory damages pursuant to 17 U.S.C. § 504(c);

F.      For an award of costs, pursuant to 17 U.S.C. § 505;

G.      For an award of reasonable attorney's fees, pursuant to 17 U.S.C. § 505;

H.     For an award of compensatory damages in an amount to be proven at trial arising

from Bio-Reference's breach of contract and breach of the implied covenant of good faith and

fair dealing, including but not limited to contractual remedies specified in the License

Agreements upon a finding of unlicensed use;

I.     For an award of prejudgment interest on the amount of any award to Microsoft

Corporation; and

J.     For such other relief as the Court deems just and proper.


Dated:  April 22, 2016                    Respectfully submitted,

                                          */s/ Brian M. English*

                                          TOMPKINS, MCGUIRE, WACHENFELD & BARRY
                                          William H. Trousdale
                                          wtrousdale@tompkinsmcguire.com
                                          Brian M. English
                                          benglish@tompkinsmcguire.com
                                          3 Becker Farm Road
                                          Suite 402
                                          Roseland, New Jersey 07068-1726
                                          Telephone: (973) 623-7893
                                          Facsimile: (973) 623-7780

                                          Clara J. Shin (*pro hac vice* admission to be filed)
                                          cshin@cov.com
                                          Jeffrey M. Davidson (*pro hac vice* admission to be filed)
                                          jdavidson@cov.com
                                          Wallace J. Lee (*pro hac vice* admission to be filed)
                                          wlee@cov.com
                                          COVINGTON & BURLING LLP
                                          One Front Street
                                          San Francisco, CA 94111-5356
                                          Tel: 415.591.6000
                                          Fax: 415.591.6091

                                          *Attorneys for Plaintiff Microsoft Corporation*

## LOCAL RULE 11.2 CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other action pending in this or any other court, or of any pending arbitration or administrative proceeding.

*/s/ Brian M. English*

## LOCAL RULE 201.1 CERTIFICATION

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that the plaintiff seeks, inter alia, injunctive relief, and the damages recoverable exceed the sum of $150,000 exclusive of interest and costs.

*/s/ Brian M. English*