<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MICROSOFT CORPORATION,** : | |
| : | **Civil Action No. 16-2291 (ES) (JAD)** |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | |
| **BIO-REFERENCE LABORATORIES, INC.,** : | |
| : | |
| Defendant. : | |

**SALAS, DISTRICT JUDGE**

Pending before the Court is Defendant BioReference Laboratories, Inc.'s ("BioReference") partial motion to dismiss Plaintiff Microsoft Corporation's ("Microsoft") copyright infringement claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 13 ("Motion"); D.E. No. 1 ("Compl.") ¶¶ 34-41). The Court has jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a). The Court also has jurisdiction over Microsoft's state-law claims under 28 U.S.C. §§ 1367(a) and 1332. Having considered the parties' submissions in support of and in opposition to the Motion, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the following reasons, BioReference's Motion is DENIED.

**I.   Factual Background**[1]

Microsoft is a Washington corporation that "develops, manufactures, and supports a wide range of computer and Internet-related software products and services." (Compl. ¶ 2, 7). Part of

---

[1]   The Court must accept Microsoft's factual allegations as true for purposes of resolving BioReference's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012) ("As such, we set out facts as they appear in the Complaint and its exhibits.").

1

Microsoft's business includes selling its products to customers through a variety of volume licensing programs. (*Id.* ¶ 4). One such program is the Enterprise program, which "permits customers to make and deploy copies of Microsoft products on the condition that they order and pay for those copies on an annual basis, at agreement anniversaries." (*Id.*). Microsoft explains that, "[w]hen an Enterprise license agreement expires, Enterprise customers must order licenses for all copies of products for which they have not yet submitted an order and must cease making further copies." (*Id.*).

BioReference is a New Jersey corporation that "offers laboratory testing and related services to physician offices, clinics, hospitals, long-term care facilities, employers, governmental units, and correctional institutions." (*Id.* ¶ 3, 8). BioReference employs approximately "5,000 individuals and operates out of nine locations, including New Jersey, New York, Maryland, Massachusetts, Rhode Island, Ohio, Florida, Texas, and California." (*Id.* ¶ 3).

On January 10, 2013, Microsoft and BioReference entered into an Enterprise licensing program. (*Id.* ¶ 5). That program is governed by the following agreements: (a) Microsoft Business and Services Agreement; (b) Enterprise Agreement; (c) Enterprise Enrollment (Direct); (d) Enrollment for Application Platform (Direct); (e) Enrollment for Core Infrastructure (Direct EA); and (f) Customer Price Sheets, Product Selection Forms and Program Signature Forms (collectively, the "License Agreements"). (*Id.* ¶ 13). The License Agreements remained in force through January 31, 2016 and are "governed by and construed with the laws of the State of Washington and federal laws of the United States." (*Id.*; *see also* D.E No. 14 ("Def. Mov. Br.") at 12; D.E. No. 24 ("Pl. Opp. Br.") at 9).

Under the terms of the License Agreements, "BioReference granted Microsoft and its affiliates the 'right to verify [BioReference's] compliance with the license terms' through an

'independent auditor.'" (Compl. ¶ 17). In other words, BioReference agreed to submit, at Microsoft's request, to verification procedures to ensure that it paid for all the software it deployed. (*See id.* ¶ 4). BioReference further agreed to "promptly provide the independent auditor with any information it reasonably requests in furtherance of the verification." (*Id.* ¶ 17). And if the independent auditor discovered unlicensed use, BioReference agreed to order "sufficient licenses to cover its use" and to pay added penalties if its unlicensed use constituted five percent or more. (*Id.* ¶ 18).

On December 15, 2014, Microsoft notified BioReference that it retained KPMG (a big four accounting firm) to verify BioReference's compliance with the terms of the License Agreements. (*Id.* ¶¶ 6, 19). Microsoft alleges that KPMG "identified widespread unlicensed use of Microsoft products." (*Id.* ¶ 20). Microsoft further alleges that BioReference took affirmative steps to obstruct KPMG's verification. (*Id.*).

On May 14, 2015, KPMG issued a preliminary report—referred to as the "Effective License Position" or "ELP"—detailing BioReference's actual license use. (*Id.* ¶ 21). On September 14, 2015, Microsoft sent BioReference an updated ELP indicating that BioReference's unlicensed use totaled approximately $3.5 million. (*Id.* ¶ 23). Following some back-and-forth between the parties, KPMG issued its final ELP on January 21, 2016, indicating that "BioReference's unlicensed use and deployment of Microsoft products was still valued at millions of dollars." (*Id.* ¶ 27). BioReference did not respond to the final ELP. (*Id.* ¶ 28).

II.   **Procedural Posture**

Microsoft sued BioReference for copyright infringement (Count 1), breach of contract (Count 2), and breach of the implied covenant of good faith and fair dealing (Count 3). (*See id.* ¶¶ 34-51). BioReference moved to dismiss only Microsoft's copyright infringement claim, asserting

that Count 1 of Microsoft's Complaint fails to state a claim under Federal Rule of Procedure 12(b)(6). (D.E. No. 13; *see also* Def. Mov. Br.). Microsoft opposed BioReference's Motion (Pl. Opp. Br.), and BioReference filed a reply in further support of its Motion (D.E. No. 27 ("Def. Reply Br.")). BioReference's Motion is now ripe for adjudication.

### III.    Legal Standard

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But the court is not required to accept as true "legal conclusions." *Iqbal*, 556 U.S. at 678. And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim,

---

[2]    Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

4

items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.").[3]

### IV. Discussion

BioReference characterizes this case as a "contractual payment dispute between a software vendor (Microsoft) and its authorized customer, contract partner, and licensee (BioReference)." (Def. Mov. Br. at 1). As such, BioReference accuses Microsoft of improperly seeking "an unfair litigation advantage" and "extra-contractual damages by recasting a straightforward contract dispute as an insupportable copyright infringement claim." (*Id.* at 1, 3). BioReference advances several arguments in support of its motion, most of them concerning a licensee's exposure (or lack thereof) to a suit for copyright infringement. (*See, e.g.*, *id.* at 3-4, 7-23). But at bottom, BioReference seeks dismissal of Microsoft's copyright claim because, according to BioReference, "the real dispute between the parties is whether BioReference paid Microsoft the correct amount due under the license agreement." (*Id.* at 4).

Microsoft counters that BioReference's actions constitute "a textbook example of copyright infringement." (Pl. Opp. Br. at 1). Microsoft alleges that BioReference has been "reproducing Microsoft's copyrighted software without obtaining, and paying for, the required licenses." (*Id.*). And in response to BioReference's argument that its legal exposure is limited to breach-of-contract claims, Microsoft says that BioReference is incorrect as a matter of law and ignores "key allegations" in its Complaint. (*Id.*).

---

[3] Although Microsoft did not attach the License Agreements to its Complaint, BioReference submitted all the documents comprising the License Agreements (with the exception of the Customer Price Sheets, Product Selection Forms and Program Signature Forms) as attachments to the Declaration of Christopher F. Gosselin. (*See* D.E. No. 15 ("Gosselin Decl."), Exhibits A-F). The Court may properly consider the License Agreements in deciding BioReference's Motion because those documents are "integral to or explicitly relied upon" in the Complaint. *See Buck*, 452 F.3d at 260; (Compl. ¶¶ 4-6, 13-25; 43-51).

Especially relevant here, Microsoft argues that BioReference's motion to dismiss fails to address Microsoft's allegations of unauthorized reproduction *after* the License Agreements expired. (*Id.* at 7). That is, according to Microsoft, BioReference argues only that it was authorized to make copies of Microsoft's software "*during* the term of the agreement." (*Id.*) (emphasis in original). Thus, Microsoft contends, "[e]ven if BioReference were correct . . . , Microsoft would have valid copyright claims for the post-expiration infringement." (*Id.*). The Court agrees that if Microsoft's allegations of post-expiration infringement are sufficiently pleaded under *Iqbal* and the Federal Rules of Civil Procedure, those allegations are enough to defeat BioReference's motion to dismiss.[4] The Court now turns to those allegations.

**A. Microsoft's Allegations of Post-Expiration Infringement**

BioReference's moving brief does not appear to address Microsoft's allegations of post-expiration infringement. (*See* Def. Mov. Br. at 2) (arguing that the License Agreements "expressly permit the entire BioReference enterprise to make unlimited copies of Microsoft software *at any time during the term of the agreement*"); (*id.*) (arguing that Microsoft provided BioReference "with access and permission to download and make additional copies of each and every instance of the software identified in the complaint, *all of which occurred during the three-year term of the enterprise license agreement*"); (*id.* at 10-11) ("The complaint does not allege that BioReference engaged in any unauthorized use or copyright infringement prior to 2013, *or*, *for that matter*, *outside the contemplation of the agreement between the parties*."); (*id.* at 14) ("Microsoft, however, is not alleging that BioReference's purported copying of its software was unauthorized.

---

[4] Microsoft asserts—and the Court agrees—that "because BioReference has not requested anything less than full dismissal of Microsoft's copyright claims, the presence of the post-expiration claims requires BioReference's motion to be denied in its entirety." (*Id.*).

6

To the contrary, Microsoft admits that the copying was permitted and, furthermore, that the agreement expressly provides for the deployment of additional copies of software.").

Microsoft's Complaint includes the following allegations directed to post-expiration infringement:

- "Microsoft and Bio-Reference entered into an Enterprise licensing agreement on January 10, 2013." (Compl. ¶ 5).

- "The License Agreements remained in force through January 31, 2016." (*Id.* ¶ 13).

- "When an Enterprise license agreement expires, Enterprise customers must order licenses for all copies of products for which they have not yet submitted an order and must cease making further copies." (*Id.* ¶ 4).

- "On January 21, 2016, KPMG provided its final ELP, accounting for the additional information Bio-Reference had provided. Based on the final ELP, Bio-Reference's unlicensed use and deployment of Microsoft products was still valued at millions of dollars." (*Id.* ¶ 27).

- "Bio-Reference remains substantially under-licensed and is making extensive use of Microsoft's software without permission." (*Id.* ¶ 32).

- "Between 2013 and continuing to the present, Bio-Reference has infringed the copyrights in Microsoft's software by reproducing Microsoft software products covered by Microsoft Corporation's registered copyrights in the United States of America without approval or authorization from Microsoft." (*Id.* ¶ 36).

- "Between 2013 and continuing to the present, Bio-Reference has also infringed the copyrights in Microsoft's software by reproducing Microsoft software products covered by Microsoft Corporation's registered copyrights in the United States of America without due compensation to Microsoft." (*Id.* ¶ 37).

- "Despite Microsoft's efforts to resolve this matter without judicial intervention, Bio-Reference has to date refused to perform its obligations." (*Id.* ¶ 6).

### B. BioReference's Arguments regarding Post-Expiration Infringement

On reply, BioReference argues that "Microsoft has not pled any factual basis to support a claim that BioReference made unauthorized copies of other unidentified products *after* expiration of the enterprise agreement. Rather, Microsoft pled this case as a dispute about alleged under payment for copies made *during* the term of the agreement." (Def. Reply Br. at 2). To that end,

BioReference contends that "[t]he audit, which is the only asserted basis for Microsoft's demand for more money in this proceeding, was conducted almost a year before the agreement expired and cannot possibly support a claim for alleged copying a year later." (*Id.*).

BioReference relies on *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000), arguing that a "properly pled copyright infringement claim must set out the particular infringing acts with some specificity." (Def. Reply. Br. at 13). In *Marvullo*, the plaintiff, a professional photographer, sued a magazine publisher for copyright infringement, among other claims. 105 F. Supp. 2d at 226-28. For his copyright infringement claim, the plaintiff alleged only that his photograph "was published by the Defendants beyond the scope and authority of the limited license." *Id.* at 228. The court held that the plaintiff's copyright infringement claim was "legally insufficient" because it merely stated a "legal conclusion insufficient to withstand a motion to dismiss." *Id.* BioReference argues that this Court should similarly dismiss Microsoft's copyright infringement claim because Microsoft's Complaint "does not contain any facts that support any claim for copying of any products after expiration of the agreement." (Def. Reply Br. at 14). BioReference contends that "Microsoft has not pled any such misconduct because there is none." (*Id.*).

In addition, BioReference argues that the "license rights for products [it] obtained during the term of the agreement are perpetual" and therefore "did not expire with the agreement." (*Id.* at 11) (citing Gosselin Decl., Ex. D § 7(b)(iv)). BioReference maintains that it "has paid Microsoft millions of dollars under the agreement," and "at the end of an enrollment, in the event of a payment shortfall, the agreement would require BioReference to pay for additional perpetual licenses to cover any gap." (Def. Reply Br. at 12). According to BioReference, "the Agreement, and not copyright law, governs the effect of the agreement's expiration on BioReference's

licensing position." (*Id.*).  For support, BioReference cites § 3(c)(iii) of the Enterprise Agreement (Gosselin Decl., Ex. B); § 7(e) of the Enterprise Enrollment (Direct) (*id.*, Ex. C); §§ 7(b)(i), (ii), and (iv) and § 7(f) of the Enrollment for Application Platform (Direct) (*id.*, Ex. D); and § 7(e) of the Enrollment for Core Infrastructure (Direct) (*id.*, Ex. E).  (*See* Def. Reply Br. at 12).

### C. Microsoft's Allegations of Post-Expiration Infringement Are Sufficient to State a Claim for Copyright Infringement

The Court finds that Microsoft's allegations of post-expiration infringement—accepted as true and viewed with every favorable inference—are sufficient to state a claim for copyright infringement.[5]  Microsoft specifically alleges that BioReference reproduced Microsoft's copyrighted software products "[b]etween 2013 *and continuing to the present*." (Compl. ¶¶ 36-37).  These allegations do not come in a vacuum, like the plaintiff's one-line legal conclusion in *Marvullo*, but rather flow from Microsoft's detailed account of KPMG's audit and findings.  (*See* Compl. ¶¶ 19-28) (describing KPMG's audit and findings of "widespread unlicensed use"); (Compl. ¶ 32) ("BioReference *remains* substantially under-licensed and is making extensive use of Microsoft's software without permission").  In sum, Microsoft alleges that it retained KPMG to verify BioReference's compliance with the License Agreements, that KPMG found "widespread unlicensed use" of Microsoft's products, and that BioReference continued to use and reproduce Microsoft's products after the License Agreements expired without Microsoft's approval or authorization.  Thus, even if Microsoft is incorrect and its allegations of unauthorized reproduction[6] are not, by themselves, sufficient to state a claim for copyright infringement, the

---

[5] "To establish a claim for copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005).  Microsoft alleges that it "holds valid and exclusive copyrights for each of the Microsoft products identified" in the Complaint, and BioReference does not appear to challenge those allegations. (*See* Compl. ¶ 35).

[6] Those allegations are: (i) "Between 2013 and continuing to the present, Bio-Reference has infringed the copyrights in Microsoft's software by reproducing Microsoft software products covered by Microsoft Corporation's

Court is satisfied that those allegations, together with Microsoft's extensive allegations about KMPG's audit, warrant a favorable inference and satisfy Federal Rule of Civil Procedure 8(a)(2).

Indeed, BioReference recognizes that this inference can be drawn from Microsoft's allegations.  (*See* Def. Reply Br. at 11) ("Microsoft did not plead any facts supporting an allegation that BioReference made unauthorized copies after expiration of the Enterprise Agreement, *except to the extent they mean that BioReference continues to use the products allegedly detected in the 2015 audit.*").  For its part, BioReference argues that "[i]f Microsoft now claims that BioReference did more than simply fail to pay the additional amount Microsoft believes due, those allegations are not supportable under *Iqbal* under the facts pled, because a claim based upon the sheer possibility that a defendant has acted unlawfully must be dismissed."  (*Id.*) (citing *Iqbal*, 556 U.S. at 678).  The Court finds this argument unpersuasive.  As discussed above, the Court must accept as true Microsoft's factual allegations that BioReference's pre-termination reproduction and use— corroborated by KPMG—continued after the License Agreements expired.  Whether those factual allegations are true, and if so, whether they constitute copyright infringement, are questions for a later date.

The Court next turns to BioReference's argument that the license rights it obtained are perpetual and thus did not expire with the termination of the License Agreements.  (Def. Reply. Br. at 11).  According to BioReference, an "Enterprise Agreement is not a three-year rental agreement.  Instead, it provides perpetual licenses to all of the software needed by the business enterprise under flexible accounting and payment terms." (*Id.* at 11-12) (citing Gosselin Decl., Ex. B § 3(c)(iii); Ex. C § 7(e); Ex. D §§ 7(b)(i), (ii), (iv) and § 7(f); and Ex. E § 7(e)).  BioReference

---

registered copyrights in the United States of America without approval or authorization from Microsoft"; and (ii) "Between 2013 and continuing to the present, Bio-Reference has infringed the copyrights in Microsoft's software by reproducing Microsoft software products covered by Microsoft Corporation's registered copyrights in the United States of America without due compensation to Microsoft."  (Compl. ¶¶ 36-37).

asserts that it has already "paid Microsoft millions of dollars under the agreement" and that "in the event of a payment shortfall, the agreement would require BioReference to pay for additional perpetual licenses to cover any gap." (Def. Reply Br. at 12). Thus, "the Agreement, and not copyright law, governs the effect of the agreement's expiration on BioReference's licensing position." (*Id.*).

Microsoft argues that BioReference obtained "non-perpetual licenses" that "were cancelled and terminated upon expiration of the License Agreements on January 31, 2016." (Pl. Opp. Br. at 6) (citing Gosselin Decl., Ex. C §§ 1 & 7(c)(iii); Ex. D §§ 1 & 7(c)(iv); and Ex. E §§ 1 & 7(c)(iii)). The provisions Microsoft relies on, however, appear to concern only subscription licenses and online services. (*See, e.g.*, Ex. C § 7(c)(iii) (Subscription Licenses and Online Services without an Extended Term)). And BioReference is quick to point out that these provisions "have nothing to do with the dispute between the parties" because "BioReference is not a subscription customer (and not alleged to be one), and the products at issue were not provided through a subscription service." (Def. Reply Br. at 12).

Whether the licenses obtained by BioReference during the term of the License Agreements are perpetual or non-perpetual is an issue better suited for summary judgment. *See* Fed. R. Civ. P. 56; *see also Berg v. Hudesman*, 801 P.2d 222, 229 (Wash. 1990) ("Any determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and relations of the parties, and the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties.") (citing Restatement (Second) of Contracts § 212 cmt. b (1981)). Even assuming Microsoft cannot rely on the provisions concerning subscription services, the License Agreements appear to require the Court to assess the extent to which BioReference paid for the licenses to determine if those licenses are

perpetual or non-perpetual. For example, section 3(c) of the Enterprise Agreement—aptly titled "When Licenses become perpetual"—contains four subsections. (Gosselin Decl., Ex. B § 3(c)). BioReference directs the Court to subsection (iii), which provides that "Enrolled Affiliate will have perpetual Licenses to use the Products ordered in the latest version available (or any prior version) as of the date of expiration, termination, or renewal." (*See* Def. Reply Br. at 12) (citing Gosselin Decl., Ex. B). But BioReference skips right over subsection (i), which provides that "[a] License is non-perpetual *until Enrolled Affiliate has paid for a License in full* and the applicable initial Enrollment or renewal term during which the License was ordered must have expired or been terminated as permitted in this agreement." (Gosselin Decl., Ex. B § 3(c)(i)). BioReference does not address this provision of the Enterprise Agreement.

Another provision, relied on by BioReference, is § 7(e) of the Enterprise Enrollment (Direct), which concerns early termination. (*See* Def. Reply Br. at 12) (citing Gosselin Decl., Ex. C § 7(e)). That provision states that, in the event of a breach, an Enrolled Affiliate (i) "may immediately pay the total remaining amount due, including all installments, in which case, Enrolled Affiliate will have perpetual rights for all Licenses it has ordered . . ."; or (ii) "may pay only amounts due as of the termination date, in which case Enrolled Affiliate will have perpetual Licenses . . . for (1) all copies of Products for which payment has been made in full, and (2) a proportional number of copies of Products it has ordered for which payment has been made." (Gosselin Decl., Ex. C § 7(e)). Thus, given Microsoft's allegations that BioReference has failed to pay for all the licenses it obtained during the term of the License Agreements (*see, e.g.*, ¶¶ 30, 32, 45), the Court cannot accept BioReference's argument that every license it obtained is perpetual.

## V.     Conclusion

For the foregoing reasons, BioReference's partial motion to dismiss Count 1 of Microsoft's Complaint is denied.  An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**